# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD CONAWAY, # 2817238, | * |
| Plaintiff | * |
| v | * Civil Action No. RDB-19-809 |
| SGT. APRIL CARR,[1] | * |
| Defendant | * |
| | *** |

## MEMORANDUM OPINION

On March 15, 2019, the Court received an unverified[2] civil rights Complaint filed pursuant to 42 U.S.C. § 1983 filed by self-represented Plaintiff Edward Conaway. Conaway alleged that Sgt. April Carr did not protect him when she failed to act on his February 15, 2019 request for medical single-cell housing and wrongfully issued him a notice of infraction for refusing to return to his assigned cell. ECF 1, p. 1.[3] In addition to $ 5 million in damages, Conaway seeks injunctive relief mandating his placement in a single medical cell. ECF 1, p. 3. Although incarcerated at the North Branch Correctional Institution in Cumberland ("NBCI") at the time of filing, Conaway was released from NBCI on or before September 12, 2019, and now resides in Glen Burnie, Maryland. ECF 1, p. 2; ECF 14. While his release moots his request for an injunction, his claim for money damages will proceed.

---

[1] The Clerk shall amend the docket to reflect the full spelling of Defendant's name.

[2] Conaway provides no declaration or affidavit in support of his lawsuit.

[3] This Memorandum Opinion adopts page citation assigned by the Court's electronic docketing system.

The case is before the Court on Defendant Carr's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 11) and Conaway's opposition thereto. ECF 13. A hearing to determine the matters pending is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For reasons that follow, Defendant Carrr's Motion, construed as a Motion for Summary Judgment,[4] is GRANTED.

**A. Background**

Conaway claims that Carr neglected his medical needs by refusing to place him in medical housing on February 15, 2019. ECF 1, p. 1. Conaway told Carr that he needed to be housed on C-tier in a single medical cell because of his 2006 injury which resulted in amputation of his penis and the need to use a Foley catheter to urinate. As a result, Conaway's then-cellmate did not want him in the cell because he smelled of urine. ECF 1, pp. 1, 3. Conaway states his interaction with Carr was recorded by the security camera for Tier A in Housing Unit 2. *Id.* Conaway alleges that he filed a Request for Administrative Remedy ("ARP") seeking placement in a single medical cell in Unit 2 of Tier C at NBCI (ECF 1, p. 3), but provides no documentation of this event.

Carr denies any communication with Conaway concerning medical or housing issues. ECF 11-2, Decl. of April Carr, p. 2, ¶ 7. Carr also avers that Conaway never told her that he was endangered by his cellmate, that his cellmate was making any comments, or that he should be relocated to a different cell. *Id.*, p. 1, ¶ 4. Counsel for Carr represents that there is no archived video footage of interactions between Conaway and Carr. ECF 11-3, p. 1, ¶ 3, Decl. of Benjamin

---

[4] Carr's dispositive motion is treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Bradley with attachments. Further, Conaway lacked the necessary paperwork mandating his transfer to a single cell. ECF 11-2, p. 1, ¶ 2.

On February 15, 2019, Carr charged Conaway with violating inmate rule 316 (disobeying an order) by refusing to return to his cell. ECF 11-2, p. 2, ¶ 5; ECF 11-3, p. 3. Carr reported that Conaway "came out of his cell for yard [sic] with all of his property packed and left it on the Wing", told her "I refuse to cell with any other inmate because of my condition. I'm refusing to fucking lock back in" and ignored her orders to return to his cell before stating, "fuck it, take me to lockup." ECF 11-2, p. 2, ¶ 5; ECF 11-3, p. 3.

During his February 19, 2019 hearing on the rule violation, Conaway argued that despite his injury correctional staff "continue to put me in cells with other inmates that could hurt me." ECF 11-3, p. 4. Hearing Officer Jamie Farris found Conaway guilty of violating inmate rule 316, finding Carr's report "to be credible and reliable" and finding that Conaway "did refuse to return to his cell . . ." *Id.* at 5. Farris also found that Conaway did not provide "[any] evidence that the other inmates were going to hurt him" or "[a]ny medical documentation for a single medical or single cell...." *Id.*

Counsel notes that while Conaway filed an ARP grievance concerning Nurse Holly Pierce alleging the denial of medication, he filed no grievance against Carr prior to filing this lawsuit. ECF 11-3, Decl. of Benamin Bradley, with attachments; ECF 11-4, IGO Records Decl. of Samiyah G. Hassan, p. 1, ¶ 2.

## B. Standard of Review

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable

claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In making this determination, this Court "must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White*, 886 F. 2d 721, 722-23 (4th Cir. 1989).

A motion for summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). Nevertheless, a party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the non-

moving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

**C. Analysis**

Carr moves to dismiss or for summary judgment on the basis that Conaway has no Eighth Amendment right to be housed in a single cell for medical reasons absent a directive from medical providers indicating the need for such placement. ECF 11-1, p. 5. She further argues that she was not deliberately indifferent to Conaway's medical needs. *Id.*, pp. 8-9. Carr also raises the affirmative defense of non-exhaustion of administrative remedies.[5]

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

---

[5] Because resolution of this case turns on non-exhaustion of administrative remedies, the Court declines to address Carr's other arguments, including her claim of entitlement to qualified immunity found at ECF 11-1, p. 6.

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'... normally creates an obligation impervious to judicial discretion")).

A prisoner must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he...PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for

"inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.02.28.02(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01 *et seq.* Thus, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a

7

correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[6] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge denying all relief to the prisoner is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if

---

[6] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. A prisoner need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore*, 517 F.3d at 725 (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible

administrative level"); *Pozo*, 286 F.3d at 1024 (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Exhausting administrative remedies after a Complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.... The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009), *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012), *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al.*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015).

It is clear from the record evidence that Conaway failed to initiate, much less exhaust his administrative remedies concerning Carr's alleged misconduct prior to filing this lawsuit. While he contends that he filed ARP grievances against medical personnel, Conaway has failed to provide this Court with any opposition to the affirmative defense, necessitating a finding that he has failed to exhaust administrative remedies.

Although it is fairly raised in the complaint, the parties have not addressed Conaway's constitutional right to certain due process protections in the context of prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974). These rights include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence

when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.* at 540, 564, 570-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact, *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980), and findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). Sufficient evidence exists to support the Hearing Officer's finding that Conaway wrongly failed to comply with Carr's lawful order to return to his cell. *See* ECF 11-3, pp. 3-5. Carr's report is "some evidence" upon which a guilty finding in a prison disciplinary hearing may be based; nothing more is constitutionally required.

Defendant Carr has established that she is entitled to judgment in her favor and her Motion shall be granted by a separate Order to follow.

___October 1, 2019___  
Date

___/s/ Richard D. Bennett___  
RICHARD D. BENNETT  
UNITED STATES DISTRICT JUDGE